UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Mill's Pride, L.P.,**

    **Plaintiff,**

**-v-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 2:07-cv-990**
　　　　　　　　　　　　　　　　　　　　　　　　　　**JUDGE SMITH**
　　　　　　　　　　　　　　　　　　　　　　　　　　**Magistrate Judge Kemp**

**Miller Salvage, Inc.,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

    Plaintiff, Mill's Pride, L.P., initiated this suit under provisions of the Declaratory Relief Act, 28 U.S.C. § 2101 *et seq.* and various provisions of The Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), including Sections 113(g), 107(a), and 113(f), to establish Defendants' obligations to contribute to past and future removal, response and remediation costs relating to the clean up of the Miller Site. In addition, Plaintiff raises several Ohio tort and contractual claims. Plaintiff brings suit against the following defendants: Miller Salvage, Inc.; W.D. Miller Enterprises, LLC; Miller Land Company, Inc.; Fred T. Miller in his individual capacity and d/b/a Miller Lumber Company; Robert H. Miller; Walter Douglas Miller; and John and/or Jane Does.

    Defendants Miller Salvage, Inc., Fred T. Miller, Miller Land Company, Inc., and Robert H. Miller filed Counterclaims against Mill's Pride L.P. under CERCLA. These defendants also filed several state law claims including fraud, breach of contract, and tort claims.  Plaintiff then filed a motion to dismiss Counterclaim Five, Fraud, and Robert H. Miller's Counterclaims,

which parties agree only include Counterclaim Three, contribution under 42 U.S.C. § 9613(f), and Counterclaim Four, common law contribution (Doc. 13).

This action asserts a federal claim; therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331. In addition, this Court has supplemental jurisdiction over the claims arising under Ohio state law pursuant to 28 U.S.C. § 1367. Plaintiff and Defendants Miller Salvage, Inc., Fred T. Miller, Miller Land Company, Inc., and Robert H. Miller briefed this Court on the motion to dismiss Defendants' Counterclaims, and this Motion is now ripe for review. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Mill's Pride's motion to dismiss Defendants' Counterclaims.

## I.    BACKGROUND

Plaintiff, Mill's Pride L.P. ("Mill's Pride"), is a cabinet manufacturer that has a by-product of its manufacturing processes, sawdust. Defendant Fred Miller d/b/a Miller Lumber Company contracted with Mill's Pride in 1993. Fred Miller d/b/a Miller Lumber Company agreed that he would accept Mill's Pride's sawdust onto his disposal site, the Miller Site, which is located in the vicinity of 1617 Lapparell Road, Pike County, Ohio. This agreement continued when an intervening party, Defendant W.D. Miller Enterprises, acquired the Miller Site in April 1999. Further, the agreement remained intact when Defendant Miller Salvage, Inc., whose President is the same, Defendant Fred Miller, assumed ownership of the site in February 2002. Miller Salvage, Inc., received sawdust from Mill's Pride until May 2006. Though the parties agree that each Defendant was paid to haul the sawdust onto the Miller Site, and that each Defendant was supposed to sell the sawdust for beneficial reuse, they do not agree on how frequently the re-sale was to take place.

Hazardous substances from the sawdust at the Miller Site have been released into the environment at and from the Miller Site and Miller Land Company Property, an adjacent property. Defendants admit that the Miller Site has been the subject of, and certain Defendants have been subject to, an administrative order by the Director of the Ohio Environmental Protection Agency ("Ohio EPA") in 1994, judicial orders by the Pike County Court of Common Pleas in 2001 and 2005, and one or more General Liability Notices from the United States Environmental Protection Agency ("U.S. EPA").

Defendants allege that the owners of Miller Site accepted Mill's Pride's sawdust with the understanding that the sawdust was non-hazardous and would not harm their land based on a representation by Mill's Pride. Defendants point to a letter dated March 2, 1994, drafted by Raymond Wilkinson, Senior Vice President of Mill's Pride, which was sent to Jim Blair of the Pike County Board of Health with a copy sent to defendant Miller Lumber Company. This letter indicated that the sawdust being transferred was non-hazardous.  Further, Defendants contend that Mill's Pride knew that its sawdust contained hazardous substances, because Mill's Pride indicated in its reports to the Ohio EPA and the U.S. EPA in 1993 and 2005 that formaldehyde, a hazardous substance, existed in the sawdust.

Defendant Miller Salvage, Inc. has incurred response costs in excess of $500,000. Defendants admit that Mill's Pride has also taken action to remove leachate from the Miller Site and, therefore, incurred expenses. But, Defendants claim that through these actions, Mill's Pride has moved sawdust from the Miller Site onto the neighboring Miller Land Company's property.

Defendants raise several Counterclaims to Plaintiff's suit. Plaintiff moved to dismiss three particular counterclaims. First, Plaintiff moves to dismiss Counterclaim Five, Fraud.

Defendants Fred T. Miller and Miller Salvage allege that Mill's Pride induced Fred T. Miller and Miller Salvage, Inc. into accepting waste even though Mill's Pride had a duty to disclose that the sawdust contained hazardous substances. Further, Plaintiff moves to dismiss Robert H. Miller's claim under 42 U.S.C. § 9613(f) and Robert H. Miller's common law contribution claim. (Counterclaims Three and Four respectively).

## II.   RULE 12(b)(6) STANDARD

When considering a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded material allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods.*, 705 F.2d at 155. The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964-65 (2007).[1] A plaintiff's obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *See LULAC v. Bredesen*, 2007 U.S. App. LEXIS 20556 at *3-4 (6th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1964-65). The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. *Id.* To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Id.*

### III. DISCUSSION

**A.     Defendants Miller Salvage, Inc. and Fred T. Miller's Fraud Claim**

Plaintiff Mill's Pride moves to dismiss Defendants Miller Salvage, Inc. and Fred T. Miller's fraud claim under Federal Rule of Civil Procedure 9(b) and 12(b)(6). Mill's Pride argues that these Defendants failed to allege fraud with sufficient particularity and have not stated a claim upon which relief may be granted.

---

[1] In this recent *Bell Atlantic Corp.* case, the United States Supreme Court rejected the language previously used by the Court in *Conley v. Gibson*, providing that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic Corp.*, 127 S.Ct. at 1969 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten.").

      1.      **Particularity requirement**

Defendants Miller Salvage, Inc. and Fred T. Miller have sufficiently pled fraud under Fed. R. Civ. P. 9(b) in Counterclaim Five. Under the Federal Rules of Civil Procedure, fraud must be alleged with particularity. Fed. R. Civ. P. 9(b). The purpose of this requirement is to ensure that the defendant has sufficient notice of the misrepresentation and has enough information to be able to respond to the claim of fraud. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). The Sixth Circuit requires a plaintiff to "allege the time, place, and content of the alleged misrepresentation on which he or she justifiably relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Power & Tel. Supply Co. v. Sun Trust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006).

In this case, Defendants Miller Salvage, Inc. and Fred T. Miller have met the heightened pleading requirement of Fed. R. Civ. P. 9(b). First, these Defendants adequately alleged the time, place, and content of the alleged misrepresentation. Defendants allege the first misrepresentation was in the form of a material omission, in that at the time of the original contract, Mill's Pride was silent about the hazardous character of its sawdust. Defendants allege that another misrepresentation occurred on March 2, 1994, when Raymond Wilkinson, Senior Vice President of Mill's Pride sent his letter to the Pike County Board of Health with a copy to Miller Lumber Company falsely representing that the wood waste is non-hazardous. (Countercl. at ¶ 12). This misrepresentation occurred in the mail, through the copy of this letter that was sent to Miller Lumber Company, the name under which Fred Miller was acting as a sole proprietor. (Countercl. at ¶¶ 11,13). Further, Mill's Pride's representation that the wood waste was non-hazardous, even though it contained and/or released hazardous substances, was the content of the alleged

misrepresentation. (Countercl. at ¶13).

Next, Defendants Miller Salvage, Inc. and Fred T. Miller have alleged a fraudulent scheme and the fraudulent intent of Mill's Pride. Defendants allege that Mill's Pride misrepresented the contents of its waste, and thereafter concealed its actual hazardous contents, even though this information was disclosed to the EPA, to induce Defendants into accepting the waste. (Countercl. at ¶¶13, 41, 42, 43).

Alleging the fraudulent intent of Mill's Pride is more difficult because this information is in Mill's Pride's possession. However, the particularity requirement is relaxed when the information is in the alleged fraudulent party's possession. *Michaels Bldg. Co., et al. v. Ameritrust Company, N.A., et al.*, 848 F.2d 674, 680 (6th Cir. 1988). Intent need not be explicitly alleged in the claim as long as it states sufficient facts upon which the Court can "reasonably infer and find that the allegation of the defendant's 'intent to defraud' has been established." *Tye v. Spitzer-Dodge*, 499 F. Supp. 687, 690 (S.D. Ohio 1980). In Defendants' allegations, the intent is inferred from Mill's Pride's knowledge that its wood waste contained hazardous substances—as disclosed to the EPA—even while it first omitted that information at the time of contracting and later falsely stated that the waste was not hazardous, by letter, concealing its fraud thereafter. (Countercl. at ¶¶13, 41, 42, 43).

Defendants allege that their reliance on both Plaintiff's omission and misrepresentation was justifiable. (Countercl. at ¶ 43). The Court agrees with Defendants that they have met their burden to plead justifiable reliance, but the Court reserves the right to re-examine this issue at the Summary Judgment stage. Defendants relied on a letter sent to both Miller Lumber Company and the Pike County Board of Health. Presumably, Corporations are truthful in their

representations to government officials. Therefore, it is justifiable for Defendants to rely on a representation that was sent to both a government official and Miller Lumber Company. Plaintiff further contends that Miller Salvage, Inc. never received the letter and, therefore, could not have relied upon it. (Pl.'s Reply at 5). However, Fred T. Miller did business as Miller Lumber Company when the letter containing the alleged misrepresentation was received and later assumed position as President of Miller Salvage, Inc. Consequently, Miller Salvage, Inc. did justifiably rely on both the misrepresentation and initial omission.

Last, Defendants Miller Salvage, Inc. and its President Fred T. Miller have alleged their injury resulting from the fraud. Due to the placement of sawdust on the Miller Site, hazardous contents have been released into the environment, which have contaminated the property, reduced its value, and forced Miller Salvage to incur cleanup costs exceeding $500,000. (Countercl. at ¶¶18, 44). Defendants Miller Salvage, Inc. and Fred T. Miller have therefore met the Fed. R. Civ. Pro. 9(b) pleading requirements.

### 2. Elements of Fraud

In addition to the heightened pleading requirement of Fed. R. Civ. P. 9(b), defendants must also "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In Ohio, the elements of fraud are: "(a) a representation or, where there is a duty to disclose, concealment of the fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Groob v. Keybank*, 108 Ohio St. 3d 348, 357 (2006) (*quoting Gaines v.*

*Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 55 (1987)).

Defendants allege that Mill's Pride was fraudulent because Mill's Pride had a duty to disclose the fact that the sawdust was hazardous, yet it concealed this information. It is alleged that the duty to disclose and concealment occurred first at the time of contracting, and then again on March 2, 1994 through the above described letter. (Countercl. at ¶¶ 13, 41). At time of contracting, Mill's Pride failed to inform Defendants that the sawdust contained hazardous substances, which when composted posed a risk of being released into the environment in violation of CERCLA. Essentially, Mill's Pride failed to inform Defendants that this contract would put them in violation of a Federal statute.

In Ohio, an aspect of common law fraud addresses failures of a party to fully disclose facts of a material nature where there exists a duty to speak. *Miles v. Perpetual Savings & Loan Co.*, 58 Ohio St.2d 97, 99-199 (1979). A party has a duty to disclose information revealing a prior statement to be untrue or misleading where the undisclosed information may induce the other party to act or refrain from acting. *Id.* at 100. Although it is unclear what was stated at the time of the initial contracting, Defendants allege Mill's Pride did not disclose its understanding that its sawdust contained and/or released formaldehyde, methyl ethyl ketone, ammonia, and other hazardous substances and outdoor storage of the sawdust would cause the generation or release of hazardous substances, pollutants, and/or contaminants into the environment. (Countercl. at ¶ 13). In addition, the above described letter dated March 2, 1994, clearly indicated the sawdust was non-hazardous. Defendants allege that as a result of both the omission and misrepresentation they accepted and continued to accept the sawdust. (Countercl. at ¶ 43). Therefore, this untrue and misleading information, if disclosed, would have induced Defendants

to stop accepting the sawdust due to the risk of being in violation of CERCLA. *Id.* From the alleged facts, read in the light most favorable to the non-moving party, Plaintiff was under a duty to disclose the fact that the sawdust contained hazardous substances.

Pertaining to the duty to disclose material information prior to the consummation of a transaction, Plaintiff asserts that there must be a fiduciary relationship between the parties. "[T]he duty to discloses arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Chiarella v. United States*, 445 U.S. 222, 228 (1980). Because the Defendants have not alleged a fiduciary relationship between the parties, Plaintiff asserts that there was no duty to disclose. (Pl's Reply at 5). However, according to the facts alleged by Defendants, Mill's Pride had formed a general partnership with the Defendants. Mill's Pride actively managed and controlled the sawdust at the Miller Site. Mill's Pride controlled to whom the wood waste could be sold. Defendant Miller Salvage, Inc. was required to send weekly reports to Mill's Pride indicating how much sawdust had been brought in and shipped out from the Miller Site. Mill's Pride routinely sent representatives to the Miller Site and negotiated with the Ohio EPA pertaining to the Miller Site. Further, Mill's Pride paid Miller Salvage, Inc. to stay in business and operate the Miller Site for months while Miller Salvage, Inc. struggled financially. (Countercl. ¶ 19). Mill's Pride's influence and activity pertaining to the Miller Site demonstrate that a partnership had been formed. As partners, Mill's Pride owed a fiduciary duty to disclose that placing and composting sawdust containing hazardous material on the Miller Site would likely cause Defendants to be in violation of CERCLA.

A misrepresentation is material if a reasonable man would attach importance to its

existence or nonexistence in determining his choice of action in the transaction in question. Rest 2d Torts § 538. Defendants allege Mill's Pride was aware that it was making false statements in the letter because it had already indicated to the Ohio EPA that the sawdust contained hazardous substances. (Countercl. at ¶42). Mill's Pride had disclosed to the Ohio EPA in 1993 that the sawdust contained formaldehyde, a hazardous substance. Yet, this correspondence was never conveyed to Defendants. Although it is difficult for Defendants to know Mill's Pride's intentions, since Mill's Pride knew its sawdust to be hazardous but, instead, represented that it was not, this most likely was done to mislead others into entering into a contract to dispose of the substance. Further, Defendants allege that they reasonably relied on Mill's Pride's silence about the hazardous character of its sawdust and its later misrepresentation that the sawdust was non-hazardous. (Countercl. at ¶43). And, due to the acceptance of the sawdust and the composting and storage of the sawdust at the Miller Site, Miller Salvage, Inc. has been forced to pay in excess of $500,000 in the clean-up effort of the Miller Site. These facts indicate that Mill's Pride's concealment was material because it misled Fred Miller and Miller Salvage Inc., into believing the sawdust placed on their land was harmless, when in actuality it contaminated their land and has forced response costs.

   Defendants have therefore alleged the elements necessary for a fraud claim under Ohio law. Plaintiff's motion to dismiss Counterclaim Five is denied.

**B.  Robert H. Miller's Contribution Claim Under 42 U.S.C. § 9613(f)**

   Mill's Pride has named Robert H. Miller as a defendant in its suit, and relies on "information and belief" that he is an operator of the site, to support its allegation that he is liable for more than a million dollars in Mill's Pride's response costs. Specifically, Mill's Pride's

Complaint alleges that Robert Miller is liable for Mill's Pride's response costs under both sections 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a) & 9613(f). (Compl. at ¶¶ 64-69). Consequently, Robert Miller has asserted Counterclaim Three to defend himself against these claims. Count Three requests contribution from Mill's Pride under 42 U.S.C. § 9613(f) to pay for Mill's Pride's fair share of the response costs, in the event that Robert Miller is found liable for the response costs. (Countercl. ¶ 37).

The Supreme Court stated that "The statute [42 U.S.C. § 9613(f)] authorizes a PRP to seek contribution '*during* or following' a suit under § 106 or § 107(a). 42 U.S.C. § 9613(f)(1). Thus, § 113(f)(1) permits suit *before* or after the establishment of common liability." *U.S. v. Atlantic Research Corp.*, 127 S.Ct. 2331, 2338 (2007) (emphasis added). Therefore, both parties agree that section 113(f) of CERCLA was specifically promulgated to give potentially reliable parties ("PRPs") the right to sue other PRPs for an equitable apportionment of the costs associated with response, removal, and remediation of a site.

Plaintiff contends that Robert H. Miller fails to allege that he is a PRP and, therefore, his Counterclaim under §113(f) must be dismissed.[2] Though Plaintiff claims Robert H. Miller was and is a PRP in its Complaint, Plaintiff now appears to portray Robert H. Miller as merely a potential PRP who cannot currently defend himself in this action. Robert H. Miller's contribution counterclaim will only come to fruition if he is found to be a PRP; therefore, his pleading is adequate. Robert H. Miller does not have to concede that he is a PRP in order to assure liability is appropriately apportioned if he is found to be a PRP in this Court's final judgment. Since Counterclaim Three only becomes applicable if this Court determines Robert H.

---

[2] Robert Miller denies that he is or was an operator of the Miller site.

Miller is a PRP, Counterclaim Three is an appropriate mechanism used by Robert H. Miller to ensure that any response costs assessed in the judgment of the suit filed by Mill's Pride are equitably apportioned.

Adjudicating this issue in a single case is preferable to forcing Robert H. Miller to file a separate lawsuit after the conclusion of this case in order to assert his contribution claim. This interpretation is supported by "CERCLA's twin purposes [of] promot[ing] prompt and effective cleanup of hazardous waste sites and the sharing of financial responsibility among the parties whose actions created the hazards." *Aviall Services Inc., v. Cooper Industries*, 312 F.3d 677, 681 (5th Cir. 2002). Requiring an additional trial would not promote prompt and effective cleanup of the Miller Site, because Robert H. Miller and Mill's Pride may be hesitant to act while remaining unsure about their respective responsibilities. For all of the above reasons, this Court denies Plaintiff's motion to dismiss Counterclaim Three as it relates to Robert H. Miller.

**C.    Robert H. Miller's Counterclaim For Contribution Under Common Law**

Robert H. Miller also raises a counterclaim for common law contribution in Counterclaim Four. Robert H. Miller contends that the same principles described in the preceding section apply to this claim as well. Though Robert H. Miller's policy arguments are compelling, under Ohio law, a claim for contribution does not ripen until one party pays more than his or her just proportion of the debt or proportional share of the obligation. *See Assets Realization Co. v. American Bonding Co. of Baltimore*, 88 Ohio St. 216, 102 N.E. 719 (1913). "Under Ohio law, a party seeking [] contribution may recover only the amount it has paid in excess of its proportional share of the obligation. The right to []contribution becomes complete and enforceable only upon a payment by the claimant satisfying the whole of the obligation."

*Midwest Specialties, Inc. v. Crown Indus. Products Co.*, 940 F. Supp. 1160, 1168 (N.D. Ohio, 1996).

Robert H. Miller has not claimed or incurred any response, remediation, or removal costs associated with the Miller Site. Unlike 113(f) of CERCLA, which allows a party to bring a claim for contribution during the suit, the common law of Ohio requires complete payment by the claimant satisfying the whole of the obligation prior to initiating a common law contribution claim. Robert H. Miller's common law claim for contribution is premature and, therefore, this Court grants Plaintiff's motion to dismiss Counterclaim Four pertaining to Robert H. Miller.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Mill's Pride's Motion to Dismiss particular Counterclaims.

The Clerk shall remove Document 13 from the Court's pending motions list.

**IT IS SO ORDERED**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**